The first case this morning is 522-0552. Wilson versus Dande et al. Arguing for the appellant is Nathaniel Brown. Arguing for the appellee is Randall Mead. Each side will have 15 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Good morning. Mr. Brown, are you ready to proceed? Yes, your honor. All right, you may proceed. Thank you. My name is Nate Brown. I represent Plaintiff Appellant. May it please the court, as time allows, I'd like to address two primary issues, and if I have additional time I feel I need it, I'll address the third issue. The first issue I wish to address is the errors that relate to liability, specifically the court's judgment to deny plaintiff's motion for partial directed verdict on the issue of theories of liability as it relates to the instructions that decedent received by the defendant or did not receive. The second point being an issue that relates to causation, which is the admissibility and publishing the death certificate in its entirety. The third issue, of course, would be on causation, the court's willingness to allow defendant's expert to speculate on possibilities on the cause of death. As it relates to the issue of liability and the instruction that defendant Dr. Donde did not provide to the plaintiff, the only competent evidence that was offered at the would have offered instruction for the decedent or the patient to limit his physical activities pending a cardiac cath procedure. In this case, Mr. Wilson had some heart issues that led him to a cardiologist. The cardiologist determined that he needed a cardiac cath procedure. Despite his own expectations, that was not scheduled to be performed for two weeks. The issue in this case is whether or not he was advised or should have been advised or instructed to limit his physical activities until that procedure could be performed. The only facts that were offered in evidence at the trial were that Dr. Donde could not recall any specific instruction that he gave in his written medical record. There is no evidence that any instruction to limit or restrict his physical activities was offered. Certainly, the widow, Cheryl Wilson, she had a specific recollection of what transpired at that appointment. She recalls on at least two instances she was specifically advised that there were no physical limits or restrictions on his cath. Shortly after that appointment with Dr. Donde, the cardiologist, the decedent suffered a medical event and succumbed to those injuries. The only competent medical evidence that was offered at the trial by both plaintiff's expert, Dr. Breal, and defendant's expert, Dr. Carroll, was that a reasonably careful and competent cardiologist in Dr. Donde's position would have advised the decedent or the patient to limit or restrict his physical activities. Absent any genuine issue of fact on that matter, which was one of plaintiff's theories of liability, the plaintiff asked the court for a partial directed verdict on the specific issue that a reasonably careful and prudent cardiologist would have instructed the patient or the decedent to limit or restrict his physical activities. The court denied that motion for partial directed verdict on the basis that Dr. Donde and Dr. Carroll both offered conclusory testimony that, in their opinion, the standard of care was met by Dr. Breal and Dr. Carroll, that the standard of care required that an instruction be given. There is no evidence that such an instruction was given, and it was in clear error for the court to deny plaintiff's motion for partial directed verdict. Should such conclusory testimony be permitted to create a genuine issue of fact, plaintiffs everywhere would rely on experts to offer opinions that such and such doctor breached the standard of care without any specifics or notwithstanding more specific testimony that they, in fact, didn't breach the only evidence that was offered in this case was that the standard of care would require a doctor to provide such instruction. It was not provided, and that's the type of testimony, that's the type of opinion that requires expert testimony. A jury was not in a position to ignore or disregard that medical testimony because it's beyond the knowledge or purview of a lay person. Therefore, the specific testimony of Dr. Breal, plaintiff's expert, and Dr. Carroll, defense expert, controls that issue. The jury should have been instructed that the court had entered a partial directed verdict on that single issue of liability as it relates to plaintiff's theory of liability that Dr. Donde breaches standard of care by failing to adequately instruct the patient to limit or restrict his physical activities. The second issue that I wish to address is the issue of the death certificate. In this case, there was error that occurred at the trial level, which was brought to the attention of the court during trial and in a post-trial motion that affected both liability and causation sufficient that it warrants a return to the trial court for a new trial on the merits consistent with the court's orders in that regard. As it relates to causation, plaintiffs sought to introduce the death certificate of decedent Leslie Wilson in its entirety. The testimony in this matter was that Ms. Wilson found her husband unresponsive at their home. She contacted Cumberland County coroner who came out to the property and took Mr. Wilson's body away from the property. The coroner prepared a certified death certificate listing the cause of death. At trial, plaintiff attempted to both admit the death certificate in its entirety and publish that death certificate to the jury. The court appropriately recognized that the death certificate was self-authenticating as a public document but admissible only in part. Specifically, the court did not allow the jury to hear or see the listed cause of death that was rendered by the duly elected coroner of Cumberland County which was consistent with plaintiff's expert opinion that the cause of death was acute heart attack. Mr. Brown, doesn't that go to the qualifications of the coroner though because in Illinois a coroner doesn't have to be a doctor. Anybody who gets elected can serve as coroner so his opinion as to what the cause of death was really there's no scientific basis for that or and that was the argument at the trial court, your honor. Plaintiff's position was it goes to weight and not admissibility that's consistent with the rule of evidence on business records. Our position is the coroner that is an official duty that the coroner in the state of Illinois has if the which by virtue of of that position the performance of the that official duty that is a it's a it's a document that that is prepared and utilized in the state of Illinois. If in this case the defendant wishes to impugn the credibility of that finding or the or the coroner's qualifications he or she is free to do so but it speaks to the weight that the evidence should be afforded not its admissibility. That's consistent with Illinois supreme court rule 236. I certainly understand that that's that that's the position that the that the defense took and but our position is as a as a public document and certainly as a business record foundational elements were established by by virtue of it being self-authenticating and being an official act of the of the coroner there is no no further requirement for that to for that to be admitted and provided to the jury. It would be no different than with medical records where the declarant need not be need not be present they are admissible in their entirety and if an adverse party wishes to impugn the credibility of of such a a diagnosis or an opinion that's included in a medical record he or she is is is free to do so. In this case that that did not happen because the jury was not afforded the opportunity to see or hear what the coroner's finding was. Basically I think the the right answer there judge is it should be admitted the jury should hear it and it should be the subject to cross-examination because that's how business records are handled under the rules of of evidence. It's not an admissibility issue it's it's it's a weight issue. Did the coroner testify in this case or was the the death certificate just entered as a business record? The coroner did not testify in this case it was it was entered as the the document was was entered into evidence but the only part of the document was the the jury allowed to to hear they were not allowed to see the document. Mr. Brown there's a statute on point isn't there that allows this record to be admitted? You're you're right justice so there's there's a statute that's cited in our in our brief it's 725 ILCS 5-115-5.1. This is this is a clear directive from the Illinois General Assembly that in the state of Illinois such documents just like you know just like medical records should be utilized and can be utilized in such cases to establish the the the findings of the the coroner or the medical examiner and then of course those findings are still subject to cross-examination and the adversarial process. In this case should the defense had wanted to subpoena which is which is exactly what statute says either party can subpoena the author of such documents for their own purposes. In this case that did not happen. Well didn't the defense introduce an expert who could who challenged the conclusions of the coroner's record? Yes your honor and in fact they they did do that and and that goes to what plaintiff's argument is. This is this is an this is an item of evidence that should have been admitted and should have been considered by the jury but it's not the end-all be-all. The jury can decide what weight it should be afforded and that was what the defense argument was. The plaintiff had an expert that offered an opinion on the cause of death. It happens that the that the jury or that the coroner's finding was consistent with plaintiff's expert which I'm sure is why the defendant sought adamantly to keep it out of evidence and the defense had their own expert. This is all information that should go to a jury and the jury should be allowed to determine what weight it should it should be afforded. We know that this was significant to the jury because in in deliberations hours into the deliberation a note was given out by the jury that they sought to see the death certificate that was denied and shortly thereafter they returned with with a defense verdict. Once again we know in the state of Illinois that the coroner is given a statutory duty to determine the cause of death in certain circumstances. Where that is the case the jury should be afforded the opportunity to to to hear what the coroner's finding was because they were a duly elected officer in the state of Illinois and that's and that's evidence that the jury should have been given in this case but they were they were deprived of. The the defense indicates that there is a statute on point. The statute that they refer to relates to the admissibility of coroner's inquests. That was the subject of a Supreme Court case in 1919. That's a that's a different circumstance. That's where a jury is convened to to make those determinations. There's limited opportunity for cross-examination. There's there's concern about what effect that could have in in the presentation of evidence. That's not present here but what's interesting is that limitation doesn't extend to the um arrives at a cause of death. That should be a an element of the evidence. There's no limitation on the admission of that and should be subject to the rules of public documents and business records. Thank you Mr. Brown. Your time is up. Justice Welch do you have other questions? No questions. Justice Cates? None at this time. I have one other question Mr. Brown. Yes your honor. The Vital Records Act limits what death certificates can contain. It limits it to as I understand it name, social security number, sex, date of death, and place of death. But it doesn't allow for cause of death on the death certificate. How do you explain the the variance in the the Coroner's Act and the Vital Records Act? Yes your honor. So there are a number of of Illinois state statutes that involve the duties of the of the coroner. That is just the Vital Records Act is just one. It's our position that when taken as a whole all of the all of the statutes that relate to the the coroner's functions and and official duties reflect the the public policy in the state of Illinois. In response to questions by Justice Cates I referenced just one of those statutes. There are other statutes that are listed in our that this is an official act that that a coroner upon upon a death in their county a coroner has the duty to investigate into the cause and circumstances of a death. Those are official duties of of a coroner who's duly elected in the state of Illinois. As such the records and and that it is the policy in the state of Illinois enacted by the General Assembly that the records of such official acts should be admissible in the in the court of law. So Vital Records Act is is just one of several statutes or or directives to a coroner relating to their official duties. All right, thank you. Thank you, Judge. Mr. Mead, are you ready to proceed? Yes, I am. Thank you. I'll stay on this topic since we've discussed it most recently, but there was no error in excluding the death certificate. In fact, it would have been error to allow it into evidence. There's no probative value in the lay opinions that the coroner might express in a death Mr. Mead, why do you say they're lay opinions? He's an expert under the law. No, she's not an expert under the law. She's a public office holder. In my day, and I assume similarly today, the funeral home director was the coroner because just because they had you know there's there's no record laid by the plaintiff in this case that this individual, whoever it was, who did this death certificate was medically trained in any way or forensically trained. We just have no idea. So she does not qualify as any kind of an expert and they did not call her to testify to lay that foundation. Why doesn't that go to the way you could then attack her qualifications for the defense? Why doesn't that go to the weight to give her the to the certificate? Well, because it's not a weight question as admissibility of evidence goes. I mean and that's the an abuse of discretion standard. But more on point, you have to have a foundation laid to express opinion testimony and this is certainly opinion testimony as the cause of death and in fact the wrong opinion testimony because the death certificate was the cause of death to hypertension and there was absolutely no record of hypertension in the patient's medical chart. Mr. Mead, how do you explain 725 ILCS 5 slash 115-5.1 where it says at the end these reports of the coroner shall be public documents and thereby may be admissible as prima facie evidence of the facts, findings, opinions, diagnoses, and conditions stated therein. We have a statute that talks about the diagnoses being admissible. Well, the statute that I rely on is 55 ILCS. I know but I'm asking you about this one. Well, I don't think it has any application here because there's absolutely no factual underpinning that this was anything by a medical examiner or is anything but an absolute hearsay document. I know we're talking about an exception to the hearsay rule. This statute doesn't talk about hearsay. It talks about the coroner's medical or laboratory examiner records. We have a statute that puts forth the public policy of Illinois. There's nothing else required by this statute that says in no uncertain terms that neither the coroner's verdict, which is the same thing as the death certificate, the determination of death, or a copy thereof shall be admissible as evidence to prove or establish any of the facts and the controversy of said civil suit. So, we can argue statutes both ways on this thing. Well, the coroner's verdict is different than the records of the coroner's medical or laboratory examiner. How so? Well, it's not my job to explain that to you, but go ahead with your argument. Well, I disagree with your conclusion because there's... Well, it's not my job to explain my question to you. That's fine. I will explain it. There is no difference qualitatively between the two things. You have a group of laymen who are given a set of facts by the coroner, if I can continue, and they arrive at their guess as to the cause of death. And you have a death certificate that's filled out by a coroner, who is a layperson in this instance, we assume because there's absolutely no foundation laid as to who she or may be, he or she. So, it's their lay guess. Now, on top of that, we have two well-qualified experts who testified as to what the cause of evidence, number 403, as I cited in that Van Oosting versus Sellers case, a fifth district case, that says if it's confusing, if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice or confusion or misleading to the jury, as it would be in this case, it's properly excluded under Illinois rule of evidence 403. This is certainly confusing because there's extraneous stuff in there that this layperson put in about hypertension, which has nothing to do with the history of this case. Did you have an expert in this case who testified to possible causes of death? Yes, and that's another big part of this brief is possible causes of death. And how many of those, excuse me, how many of those opinions were to a reasonable degree of medical certainty? Well, they don't have to be. So, I don't recall if there was one or two that were. You know, we don't know if this guy had a heart attack. We just don't know. Other than some bureaucrats somewhere decided to put that, for whatever reason, good or bad, on a death certificate. That's not probative. So, you had an expert who could have testified to the contrary of this death certificate. Well, yeah, but we only hire honest experts, and he didn't have an opinion in that regard. So, he said he didn't have an opinion. He said there was a number of possibilities, all based upon this patient's medical record, which is the other element of the plaintiff's appeal in this regard. And there's certainly case law, as I've cited extensively, that supports the ability of experts to testify as to the possible causes of death, not even based to a reasonable degree of medical certainty. So, that's pretty well handled in the brief, and that's why it wasn't argued by the plaintiff or put to the bottom of the shuffle here. So, we have their expert, the plaintiff's expert, who is certainly well qualified, who expressed an opinion as to cause of death. We have our expert, who is certainly well qualified and expressed opinions as to possible causes of death. What prejudice, then, is there, even if we assume that this lay document, which has the imprimatur of a public document, if that's excluded, where's the prejudice? I mean, they had their own experts say what the cause of death was, which would be the cardiac arrest, which the death certificate says. So, that evidence and that argument got in, and there's no prejudice in keeping this document out, even if it was decided that that was somehow error. So, that did not affect the outcome of this case. MR. HAUSERLAND Are you familiar with people versus Garrett, and people versus Camden, and people versus Leach? MR. HAUSERLAND I am not. MR. HAUSERLAND Well, in those cases, the Supreme Court allowed a pathological report to be admitted, or be considered. It wasn't admitted, but they took judicial notice of it, but the pathologist testified at the hearing. And similar in the Fifth District, people versus Camden, the Fifth District took judicial notice of a pathologist's report, but the pathologist also testified. Would it have mattered if the coroner testified? MR. HAUSERLAND Well, we don't know. If the coroner had been called by the plaintiff to authenticate this document, and to express his or her opinions after laying a proper foundation, then that might have been proper. But as it is, we're just left to guess. We don't know if the coroner is the car repair guy down the street, or if he's a medical doctor. We don't know. Now, in the cases you cite… MR. HAUSERLAND You can see that the statute, just as Kate cited, 115-5.1, allows for the admission of the death certificate, or is that limited to pathological reports, autopsy reports, or toxicology reports? MR. HAUSERLAND I think the latter, and I think that the cause of death is supposed to be excluded, if I recall the case law right under that, but I may be mistaken. But getting back to your criminal cases that you mentioned, you said in each of those cases that it was a pathologist. Well, a pathologist is a trained professional, a doctor, who can lay foundation and express all of those opinions. Here, we're just left to guess, and we just don't know. MRS. HAUSERLAND Are we left to guess like your expert guessed on cause of death? MR. HAUSERLAND No, well, you know, you call those guesses, and I… MRS. HAUSERLAND Well, you call them possibilities. MR. HAUSERLAND And I disagree with your characterization of those, because each of his opinions in that regard was expressed based on the medical record of this very patient. So, and they were, okay, what causes sudden death? Stroke. He had a history of stroke. Heart attack, certainly. Dissecting aorta. There were some other ones. Deep vein thrombosis resulting in pulmonary embolism. He had deep vein thrombosis, and the testimony was undisputed that if you've had those conditions previously, you're far more likely to have them again. So, this was not whimsical or speculative, you know, throwing out guesses as you characterize it. Instead, these were medical possibilities, and granted, he would not say that they were, you know, based on a reasonable degree of medical certainty. I think he had another stroke because that wasn't supported, you know, he couldn't support that in the evidence. But these were the possibilities, and under the case law I cite, the appellate court has already determined that that type of testimony is perfectly permissible. Ergo, there was no error in admitting that testimony either. So, we've covered a lot of ground. Let's see what we have left. Now, you know, the idea that somehow a verdict should have been directed on this case, I think is, you know, somehow trying to play the ultimate game of gotcha with what's going on. Substance whatsoever, and the thrust of the argument is that if a plaintiff lists, like, 26 elements or allegations of professional negligence against a physician, then some expert has to stand up and say that he met the standard of care as to A and B and C and D, et cetera, et cetera, on through 27 or however many there are. And that's just simply not right. The testimony from Dr. Donde himself at page 665, R665, and he's certainly an expert that can testify as to his standard of care. He said, so the standard of care is what a reasonable qualified physician would do under the circumstances. So, it's not the same for one patient versus the next patient. It is looking at the totality of the circumstances. Did that physician use their best judgment and give advice that was reasonable under those circumstances? And he was asked then, you know, whether he met the standard of care, and he said, I believe I totally did. So, he defines the standard of care as including giving advice and that he met that. Our other question. He was asked, first, do you have an opinion as to whether or not Dr. Donde met the applicable standard of care? In other words, did he act as a reasonably well-qualified interventional cardiologist under like or similar circumstances? Answer, I do have an opinion, and he did, yes. So, that right there creates the question of fact that precludes any direct of a verdict. And of course, you don't give a jury instruction, which is the other side of that coin. On an issue that's properly not a directed verdict. So, this is a general statement. Did you meet the standard of care in all of its aspects, basically? Yes. To hold otherwise, to hold as the plaintiff urges, then we're going to have to create some kind of bizarre otherworldly rule that says your expert has to stand there and recite each and every allegation in the plaintiff's complaint and say, yeah, he met the standard of care as to that. I don't think there's any confusion here as to the evidence and what was said. And frankly, I don't put a lot of weight in that argument. So, the only thing left was manifest weight. There was plenty of evidence, frankly, to support a verdict either for the plaintiff or the defendant in this case. So, this is not a manifest weight case where, you know, the outcome is so bizarre that it has to be taken away from the jury as wholly unwarranted, I believe, is the standard that the courts say. So, with that, I'll answer any other questions you have. Thank you. Justice Welch, questions? No questions. Justice Cates? None. All right. Thank you. Questions for me also? Mr. Brown, rebuttal? Mr. Brown, what do you have to say regarding the possibility argument that the defense makes that it's okay to use possibility as to cause of death? Yeah, I don't believe that that's consistent with what the case law is, and I certainly disagree with counsel's argument that the testimony was offered based upon decedent's medical history. Of course, that's what was required by the pretrial ruling. This was something that was addressed prior to trial. It was the subject of a pretrial ruling by the court, and we knew going into this case, going into this trial, that the court was going to allow defense to get into other causes of death so long as it was based upon this decedent's medical history. That did not happen. It was objected to at the trial. The court noted our ongoing objection. What Dr. Carroll did, and clearly it was wrong, he didn't offer opinions to a reasonable degree of medical certainty. He went in, threw a lot of stuff against the wall to see if anything stuck, and it wasn't based upon our patient's medical history. The law requires that if you want to offer an opinion as to cause of death, it has to be stated to a reasonable degree of certainty. In this case, the pretrial ruling says it had to be based upon this particular patient's medical history. He didn't do that. Instead, what he did was he said, well, certainly sudden death could be caused by a lot of things. That's not the standard of evidence. It's not how expert testimony should be allowed to be introduced. For instance, he offered an opinion that it could have been a stroke. He had had prior TIAs, but Mr. Wilson was never diagnosed with a TIA. That's something that Dr. Carroll decided for himself, which again is part of the error in this case. I will certainly agree that you can testify to possibilities, but you have to offer possibilities to a reasonable degree of medical certainty. Dr. Carroll could not do that here because, of course, he was of the opinion that to a reasonable degree of medical certainty, you can't arrive at a cause of death. That's what his testimony should have been limited to if that was the position that he wanted to take. Instead, he offered a number of opinions that something else could have been the cause and specifically identified those. The jury should have heard, in this case, the jury should have heard from our expert who had an opinion on the cause of death to a reasonable degree of medical certainty. It should have heard from the coroner, who was part of their official duties, listed heart attack as the cause of death and should have heard from Dr. Carroll that in his opinion, to a reasonable degree of medical certainty, you cannot identify a cause of death. That's what our grievance is here. You should not allow, because they can't offer the opinions to a reasonable degree of medical certainty, you should not allow an expert to come in and offer a lot of conjecture and he could have said a snake bite. That was addressed at the trial court level. I think that therein lies the problem with offering that kind of testimony to be heard by a jury. Justice Vaughn, I want to quickly note, you asked the question about the scope of that of the coroner's reports, specifically including, but not limited to, the pathologist protocol autopsy report and toxicological reports. The plain language of the statute indicates that it extends to other records from the conduct or performance of the coroner's office. So it's certainly not just limited to those specific reports that are identified in the statute. It's clearly the intent and purpose in the state of Illinois to say records that are produced from the exercise of a duly elected coroner's performance of their official duties should be introduced as evidence in a court of law and that should be subject to the adversarial process, including rigorous cross-examination. I think I understand if the coroner uses reports or there are other medical reports that the coroner relies on, I understand those are probably admissible, but taking the next step to the death certificate is also admissible. That's where I'm having a little bit of a problem. I understand and what I'd say to that is that there is no distinction in the law and there's specifically says that a death certificate should be treated any other way than a business record or a public record. Certainly we have statutes that do that as it relates to police reports. You don't have that as it relates to a death certificate or a coroner's listed cause of death. Police reports aren't automatically admissible because they're hearsay and I think that's what Mr. Mead is saying. This death certificate's hearsay. It's a lay person created a certificate some things are admissible, the date of death, the sex of the decedent, the place of death, those types of things. You don't have to reach a conclusion, but where's the foundation for the opinion of the cause of death? That's the leap that I'm having trouble making, I think. I understand and if I could just address that. The statute specifically calls out police reports as being not subject to the exceptions under the hearsay rule. There's no such exception or call out for death certificates. So I think that that's what distinguishes a police report from a death certificate. A death certificate, the state of Illinois says the coroner has a duty in certain circumstances to investigate the cause and circumstances of a death and to render an opinion on the cause of death. That's an official function of the coroner that's part of their duties. That is a business record. It satisfies the business record as the court found. It was self-authenticating. There's no basis to exclude that from evidence in the adversarial process and the question was asked, would it be if the coroner had testified? Once again, so long as that person is available to be subpoenaed by either party, should they want to impugn the credibility of the coroner or the finding itself, they're free to do so. But just like business records, just like public documents, there's the rationale in the state of Illinois is these things are inherently reliable and trustworthy because it's an official function and duty of a duly elected officer in the state of Illinois. And once again, that's what the rules of evidence would suggest that it should come in and it should be afforded the weight that the jury wishes to offer, subject to cross-examination. Other questions, Justice Welch? No questions. Other questions, Justice Cates? No. All right, thank you. We will take the matter under advisement and issue a decision in due course.